1  CURTIS R. TINGLEY (SBN 112322)
   *ctingley@tingleylawgroup.com*
2  KEVIN P. O'BRIEN (SBN 215148)
   *kobrien@tingleylawgroup.com*
3  KEVIN W. ISAACSON (SBN 281067)
   *kisaacson@tingleylawgroup.com*
4  TINGLEY LAW GROUP, PC
   10 Almaden Boulevard, Suite 430
5  San Jose, California 95113
   Telephone:  (408) 283-7000
6  Facsimile:   (408) 283-7010

7  Attorneys for Defendants
   MOSHE, INC. erroneously sued as
8  SCENT-SATION LA;
   PERFUME EMPORIUM, INC.,
9  erroneously sued as P.E., INC.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12              SOUTHERN DIVISION – SANTA ANA

13

14

15 | SILLAGE, LLC, a California Limited Liability Company, | CASE NO. SACV14-00172 CAS RNB |

16 |                     Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS MOSHE, INC. AND PERFUME EMPORIUM, INC. IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

17 |        v. | |

18 | HISTOIRES DE PARFUMS LLC dba ALICE & PETER, a Delaware Limited Liability Company; SCENT-SATION LA, a California Limited Liability Company; and P.E., INC., dba PERFUME EMPORIUM, a California Corporation, | |

19 | | **Date:  March 17, 2014** |

20 | | **Time: 10:00 a.m.** |

21 | | **Courtroom 5** |

22 |                     Defendants. | **Honorable Christina A. Snyder** |

23

24

25

26

27

28

TINGLEY LAW GROUP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TINGLEY LAW GROUP
ATTORNEYS AT LAW

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 2

III.  ANALYSIS.................................................................................................................... 4

      A.   PLAINTIFF Fails to Show It Is Entitled to the Extraordinary and Drastic
           Remedy of a Preliminary Injunction ........................................................................ 4

           1.   There Is No Likelihood of Success On the Merits Because the
                D'224 Patent Is Plainly Invalid .................................................................... 5

                a.  PLAINTIFF has presented no evidence to support the validity of
                    its patent, but rather it relies on the presumption alone. ........................... 7

                b.  The D'224 Patent was improperly granted as it was subject to an
                    obviousness-type double patenting rejection due to D'503 Patent
                    which was applied for and granted before the more generic D'224
                    Patent.......................................................................................................... 7

                c.  PLAINTIFF did not "invent" the "cupcake" or ribbed perfume
                    container, but rather combined basic elements from prior art .................. 10

                d.  PLAINTIFF's claims of "secondary indicia" of non-obviousness
                    are conclusory red herrings because there is no nexus between the
                    purported indicia and the claims of D'244 Patent..................................... 15

      B.   There Is No Irreparable Harm ................................................................................. 17

           1.   The Lack of Any Likelihood of Success Negates Any Threat of
                Irreparable Harm ......................................................................................... 18

           2.   PLAINTIFF Has Engaged In An Unexplained Delay of Over a
                Year Which Completely Undermines Its Claim Of Irreparable
                Harm............................................................................................................ 18

           3.   PLAINTIFF Has Failed to Demonstrate Is Has Suffered Any
                Actual Harm ................................................................................................. 19

      C.   The Public Interest Is Not Served By An Injunction Stemming From An
           Invalid Patent Which Unnecessarily Constrains Competition................................. 21

      D.   PLAINTIFF's Request Injunction Is Ill-Defined Which Will Cause Undue
           Hardship and Incalculable Harm to DEFENDANTS Due to Its Undefined
           Limitations ............................................................................................................ 22

IV.   CONCLUSION ............................................................................................................ 23

1

## TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4
5
Altana Pharma AG v. Teva Pharms. USA, Inc.
566. F.3d 999 (Fed. Cir. 2009) ............................................................ 6, 7

6
Amazon.com, Inc. v. Barnesandnoble.com, Inc.
239 F.3d 1343 (Fed. Cir. 2001) ........................................................... 5, 6

7
8
Apple, Inc. v. Samsung Elecs. Co.
678 F.3d 1314 (Fed. Cir. 2012) ............................................................ 11

9
Atlas Powder Co. v. Ireco Chems
773 F.2d 1230 (Fed. Cir. 1985) ............................................................... 6

10
11
Broofield Communs., Inc. v. West Coast Entertainment Corp.
174 F.3d 1036 (9th Cir. 1999) ............................................................... 17

12
Brown v. Duchesne
60 U.S. 183 (1856)................................................................................. 20

13
14
Canon Computer Sys. v. Nu-Kote Int'l
134 F.3d 1085 (Fed. Cir. 1998) ............................................................... 7

15
Dominion Video Satellite, Inc. v. Echostart Satellite Corp.
356 F.3d 1256 (10th Cir. 2004) ............................................................. 17

16
17
Durling v. Spectrum Furniture Co.
101 F.3d 100 (Fed. Cir. 1996) ............................................................... 11

18
eBay, Inc. v. MercExchange, L.L.C.
547 U.S. 388 (2006)............................................................................... 17

19
20
Entegris, Inc. v. Pall Corp.
490 F.3d 1340 (Fed. Cir. 2007) ............................................................... 6

21
Genentech, Inc. v. Novo Nordisk A/S
108 F.3d 1361 (Fed. Cir. 1997) ............................................................... 6

22
23
General Foods Corp. v. Studiengesellschaft Kohle mb H
972 F.2d 1272 (Fed. Cir. 1992) ............................................................... 8

24
In re Borden
90 F.3d 1570 (Fed. Cir. 1996) ............................................................... 12

25
26
In re Braat
937 F.2d 589 (Fed. Cir. 1991) ................................................................. 8

27
In re Goodman
11 F.3d 1046 (Fed. Cir. 1993) ................................................................. 8

28

1

**TABLE OF CONTENTS**
(continued)

2

Page

3   In re Haruna
    249 F.3d 1327 (Fed. Cir. 2001) ............................................... 10

4
    In re Rosen
5       673 F.2d 388 (C.C.P.A. 1982) ................................................ 12

6   In re Vogel
        422 F.2d 438 (C.C.P.A. 1970) .................................................. 8
7
    Inspection Management Systems, Inc. v. Open Door Inspections, Inc.
8       2009 U.S. Dist. LEXIS 23524 (E.D. Cal. Mar. 26, 2009) .................... 17

9   Intel Corp. v. ULSI Sys. Tech., Inc.
        995 F.2d 1566 (Fed. Cir. 1993) ................................................ 5
10
    Jack Guttman, Inc. v. Kopykake Enters., Inc.
11      302 F.3d 1352 (Fed. Cir. 2002) ................................................ 5

12  Kalipharma, Inc. v. Bristol-Myers Co.
        707 F.Supp. 741 (S.D.N.Y. 1989) ............................................. 21
13
    Litton Systems, Inc. v. Whirlpool Corp.
14      728 F.2d 1423 (Fed. Cir. 1984) ............................................... 15

15  Mazurek v. Armstrong
        520 U.S. 968 (1997) ............................................................ 4
16
    Miller v. Eagle Mfg. Co.
17      151 U.S. 186 (1894) ............................................................ 8

18  Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.
        357 F.3d 1319 (Fed. Cir. 2004) ................................................ 5
19
    Oakland Tribune, Inc. v. Chronicle Pub. Co.
20      762 F.2d 1374 (9th Cir. 1985) ............................................ 18, 19

21  Oakley, Inc. v. Sunglass Hut Int'l
        316 F.3d 1331 (Fed. Cir. 203) ................................................. 6
22
    Patriarca Mfg., Inc. v. Sosnick
23      278 F.2d 389 (9th Cir. 1960) ............................................ 11, 17

24  Petersen Mfg. Co. v. Central Purchasing, Inc.
        740 F.2d 1541 (Fed. Cir. 1984) ............................................... 12
25
    Protech Diamond Tools, Inc. v. Liao
26      2009 U.S. Dist. LEXIS 53382 (N.D. Cal. June 5, 2009) ..................... 18

27  Rotec Indus., Inc. v. Mitsubishi Corp.
        215 F.3d 1246 (Fed. Cir. 2000) ............................................... 20
28

TINGLEY LAW GROUP
ATTORNEYS AT LAW

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

Smith v. Whitman Saddle Co.
  148 U.S. 674 (1893).............................................................................. 10

4

T.J. Smith & Nephew, Ltd. v. Consolidated Medical Equipment, Inc.
  821 F.2d 646 (Fed. Cir. 1987) .............................................................. 19

5

6

Texas Instruments Inc. v. International Trade Commission
  988 F.2d 1165 (Fed. Cir. 1993) ............................................................. 8

7

Titan Tire Corp. v. Case New Holland, Inc.
  566 F.3d 1372 (Fed. Cir. 2009) ..................................................... 6, 11

8

9

Winter v. NRDC, Inc.
  555 U.S. 7 (2008)................................................................................. 5

10

**FEDERAL STATUTES**

11

35 U.S.C. § 102 ................................................................................ 10

12

35 U.S.C. § 103 ................................................................................ 10

13

35 U.S.C. § 171 ........................................................................ 7, 8, 10

14

35 U.S.C. § 289 .................................................................................. 9

15

16

**STATE STATUTE**

17

Business and Professions Code § 17200..................................................... 3

18

19

20

21

22

23

24

25

26

27

28

# I. <u>INTRODUCTION</u>

In this motion, PLAINTIFF SILLAGE, LLC, (hereinafter "PLAINTIFF" or "SILLAGE") seeks to enjoin Defendants SCENT-SATION LA; and P.E., INC., dba PERFUME EMPORIUM (collectively "DEFENDANTS") from manufacturing, using, selling, or offering to sell any infringing product or any product that incorporates or otherwise features the design claimed in its purported design patent, U.S. Patent No. D693,224 (the "D'224 patent") for the pendency of this litigation.

As described in greater detail below, the conduct sought to be enjoined is ill-defined, overly broad, and otherwise confusing. There are serious questions about whether PLAINTIFF could prevail on the merits, much less whether PLAINTIFF should obtain an injunction. Moreover, an ill-defined injunction is highly prejudicial to DEFENDANTS and will be harmful to DEFENDANTS. PLAINTIFF'S primary tactic which emerges from its motion is to avoid the weakness of it claim for patent infringement and focus the Court's attention on its claimed fame and success. However, commercial success cannot buy PLAINTIFF a patent. PLAINTIFF would have to demonstrate that the D'224 patent is actually valid, enforceable, and infringed.

PLAINTIFF will fail, however, because the D'224 patent is invalid and unenforceable. Design patents are not granted to every article that possesses artistic or merchandising acclaim, but only those that are truly inventive. The reintroduction of an old product, even for a new purpose is insufficient to merit the protection of a patent. Also, the obvious combination of design elements already in existence does not entitle one to a patent. Rather, the design patent statutes were created to promote true innovation in industrial design. To fulfill this innovative purpose, a design patent should issue only where there is an invention of a new, original, and ornamental design. PLAINTIFF claims in the D'224 Patent that is has invented the "cupcake style bottle".

1   PLAINTIFF has not invented anything.  Not the cupcake, the cupcake shape,

2   or even the elements of the cupcake design.  In reality, ribbed or fluted containers

3   (whether made of glass or other material) have existed for centuries.  These

4   containers have a wide variety of shapes, including the concave arcs claimed in the

5   D'224 Patent.  PLAINTIFF may have combined design elements into a single

6   design which allegedly possess artistic or merchandising advantages, but this falls

7   short of the true innovation leading to patentability.  Calling the design a "cupcake"

8   does not transform a combination of exiting design elements into a new, original,

9   and innovative creation.  PLAINTIFF's asserted patent is invalid because it is a

10  simple combination of elements already existing in the exact same industry.

11  Therefore, DEFENDANTS respectfully request that this Court denies this

12  motion for preliminary injunction.

13  ## II. BACKGROUND

14  PLAINTIFF SILLAGE LLC asserts that it is an entity focused on creating

15  "perfume jewelry" which could be marketed as a "high-end luxury perfume".

16  (PLAINTIFF's Memorandum of Points and Authorities ("Motion") p. 4:12-27.)

17  Nicole Mather ("Mather") purportedly founded PLAINTIFF on April 28, 2010.

18  Mather claims to have personally designed PLAINTIFF's "cupcake-inspired

19  perfume bottles and caps."

20  Mather purportedly filed two design patent applications related to the

21  "cupcake-inspired perfume bottles."  The first application was purportedly filed on

22  April 20, 2011, and was issued on May 1, 2012, as United States Patent

23  No. D658,503 (the "D'503 Patent").  (See Mather Decl. ¶7, Exhs. A-B.)  The

24  second application was purportedly filed on May 20, 2011, and was issued on

25  November 13, 2013, as United States Patent No. D693,224 (the "D'224 Patent").

26  (See Mather Decl. ¶7, Exh. C-D.)

27  PLAINTIFF purportedly introduced its first perfume on November 3, 2011,

28  and has since released a total of 14 separate bottles.

TINGLEY LAW GROUP
ATTORNEYS AT LAW

- 2 -

1    PLAINTIFF filed its Complaint on February 5, 2014.  PLAINTIFF

2  previously filed a Complaint on December 23, 2013, in the Central District of

3  California, Case No. CV13-01994 CAS RNB against the same defendants and

4  asserting the same four causes of action.  PLAINTIFF alleges that DEFENDANTS

5  have (1) infringed the D'224 Patent and the D'503 Patent, (2) infringed

6  PLAINTIFF's trade dress, (3) infringed PLAINTIFF's registered trademark,

7  CHERRY GARDEN, and (4) violated Business and Professions Code §§17200, *et*

8  *seq.*

9    Defendant Moshe, Inc., is a California corporation doing business as Scent-

10  Sation (hereinafter referred to as "Scent-Sation") and erroneously sued as SCENT-

11  SATION LA.  (Declaration of Mosha Yhudai ("Yhudai Decl.") ¶1.)  Scent-Sation

12  is, and always has been, a wholesaler and retailer of various perfumes and

13  fragrances.  (Id. at ¶ 5.)  Scent-Sation has its own line of perfumes and fragrances,

14  known as "Eclectic Collections".  (Id. at ¶ 6.)

15    At any given time, Scent-Sation carries 500+ different perfumes. (Id. at ¶ 8.)

16  In or around April 2013, Scent-Sation purchased perfume (the "Alice & Peter

17  Perfume") purportedly created by Defendant HISTORIES DE PARFUMS LLC

18  d/b/a ALICE & PETER ("Alice & Peter").  Scent-Sation purchased the Alice &

19  Peter Perfume from a third-party vendor.  (Id. at ¶ 9.)

20    Scent-Sation does not design, manufacture, import, or otherwise participate

21  in the creation of any Alice & Peter perfume.  (Id. at ¶ 10.)  Scent-Sation only

22  purchased and resold the Alice & Peter perfume which was obtained from a third-

23  party vendor.  (Id.)

24    Scent-Sation has sold some of the Alice & Peter perfume at wholesale.

25  Scent-Sation sold the Alice & Peter perfume at wholesale at a price between $12.00

26  and $19.00 per bottle.  (Id. at ¶ 11.)  Scent-Sation has also sold some of the Alice &

27  Peter perfume at retail.  (Id.) Scent-Sation sold some of the Alice & Peter perfume

28  at retail for less than $30.00 per bottle.  (Id.)

Defendant Perfume Emporium, Inc., is a Nevada Corporation (hereinafter referred to as "Perfume Emporium"), and erroneously sued as P.E., INC. (hereinafter Scent-Sation and Perfume Emporium are referred to collectively as "DEFENDANTS"). Perfume Emporium was incorporated on or around May 26, 2000. Perfume Emporium is an on-line retailer of perfumes and fragrances. Perfume Emporium offers its products through its website which can be found at http://perfumeemporume.com.

Perfume Emporium obtains all of its goods from distributors, not directly from manufacturers. At any given time, Perfume Emporium offers hundreds to thousands of different perfumes on its web site.

Perfume Emporium sold perfume purportedly manufactured by Defendant HISTOIRES DE PARFUMS LLC d/b/a ALICE & PETER ("Alice & Peter Perfume"). The Alice & Peter Perfume was sold for $33.99 per item.

Perfume Emporium does not design, manufacture, import, or otherwise participate in the creation of the Alice & Peter Perfume. Perfume Emporium only purchased the Alice & Peter Perfume and resold them at retail.

Prior to the initiation of this action, DEFENDANTS were not familiar with Plaintiff or any of its purported products. (Yhudai Decl. at ¶ 13.) DEFENDANTS have never had a customer request for any perfume manufactured, distributed, or otherwise generated by PLAINTIFF. (Id. at ¶ 14.) DEFENDANTS have never observed a single instance of consumer confusion between Alice & Peter's purported products and Plaintiff's purported products. (Id. at ¶ 15.).

## III. ANALYSIS

### A.   PLAINTIFF Fails to Show It Is Entitled to the Extraordinary and Drastic Remedy of a Preliminary Injunction.

The Supreme Court has stated that "a preliminary injunction is an **extraordinary and drastic remedy** and should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (Mazurek v. Armstrong,

520 U.S. 968, 972 (1997) (emphasis added).)  This wise counsel has been echoed by the Federal Circuit: "A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'"  (Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324-1325 (Fed. Cir. 2004) (quoting Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)).)

To obtain a preliminary injunction, Plaintiff must demonstrate: (1) that it is **likely to succeed** on the merits, (2) that it is **likely to suffer irreparable harm** in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  (Winter v. NRDC, Inc., 555 U.S. 7, 21-22 (2008) (emphasis added); Nat'l Steel Car, supra, 357 F.3d at 1324-1325 (citing Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1356 (Fed. Cir. 2002); Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  If any one element is lacking, the court should not issue a preliminary injunction.  (See Nat'l Steel Car, supra, 357 F.3d at 1324-1325.)

Additionally, the focus on this analysis is limited to Plaintiff's claim of infringement of the D'224 Patent because it limited its motion to this claim.  (See Plaintiff's Notice of Motion for Preliminary Injunction, p.1:2-13.)

    1.    There Is No Likelihood of Success On the Merits Because the D'224 Patent Is Plainly Invalid.

Plaintiff is first required to establish is that it is likely to succeed on the merits at trial.  The Federal Circuit identified a likelihood of success as a critical element which cannot be overlooked in light of even substantial evidence related to the other three factors.  (See Nat'l Steel Car, supra, 357 F.3d at 1324-1325 ("[A] district court cannot use an exceptionally weighty showing on one of the other three factors to grant a preliminary injunction if a movant fails to demonstrate a likelihood of success on the merits.").)  Thus, PLAINTIFF's failure to prove a likelihood of success ends the analysis because no preliminary injunction may be issued in such an absence.

1     "With regard to the first factor--establishing a likelihood of success on the

2    merits--the patentee [Plaintiff] seeking a preliminary injunction in a patent

3    infringement suit must show that it will likely prove infringement, **and that it will**

4    **likely withstand challenges, if any, to the validity of the patent**." (Titan Tire v.

5    Case New Holland, 566 F.3d 1372, 1376-77 (Fed. Cir. 2009) (emphasis added).)

6     When the validity of a patent is challenged, "instead of the alleged infringer

7    having to persuade the trial court that the patent is invalid, at this stage it is the

8    **patentee**, the movant, **who must persuade the court that**, despite the challenge

9    presented to validity, **the patentee nevertheless is likely to succeed at trial on the**

10   **validity issue**. (Id. (emphasis added).)

11    Plaintiff asserts that DEFENDANTS hold "the burden of proving invalidity".

12   (Motion p. 17:10-13 (citing Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1339

13   (Fed. Cir. 2003).) This is misleading. "In resisting a preliminary injunction,

14   however, one need not make out a case of actual invalidity. Vulnerability is the

15   issue at the preliminary injunction stage, while validity is the issue at trial."

16   (Amazon.com, supra, 239 F.3d at 135.)

17    Given the extraordinary nature of a preliminary injunction, the Federal

18   Circuit has set a high threshold for Plaintiff to establish a likelihood of success.

19   Specifically, a patentee is expected to "'clearly [show]' that his patent is valid and

20   infringed" before a court may preliminarily enjoin the alleged infringer. (Atlas

21   Powder Co. v. Ireco Chems., 773 F.2d 1230, 1233 (Fed. Cir. 1985).) "A patent

22   holder seeking a preliminary injunction bears the ultimate burden of establishing a

23   likelihood of success on the merits with respect to the patent's validity." (Altana

24   Pharma AG v. Teva Pharms. USA, Inc., 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing

25   Entegris, Inc. v. Pall Corp., 490 F.3d 1340, 1351 (Fed. Cir. 2007).

26    In light of the patentee's burden to clearly show that the patent is valid and

27   infringed, once the alleged infringer raises a "substantial question" of invalidity, the

28   preliminary injunction should not issue. (Id.; Genentech, Inc. v. Novo Nordisk A/S,

1  108 F.3d 1361, 1364 (Fed. Cir. 1997).  "The burden on the accused infringer to

2  show a substantial question of invalidity at this stage is lower than what is required

3  to prove invalidity at trial."  (Altana Pharma AG v. Teva Pharms. USA, Inc.,

4  566 F.3d 999, 1006 (Fed. Cir. 2009)

5      PLAINTIFF's motion is based solely on the alleged infringement of the

6  D'224 patent.  However, PLAINTIFF has failed to meet its burden of establishing

7  the validity of its patent, relying instead on the presumption of validity.  The D'224

8  Patent is actually overwhelmingly vulnerable to invalidity because of procedural

9  and substantive flaws which should have resulted in a complete refusal to issue the

10  patent by the USPTO.

11          a.    Plaintiff has presented no evidence to support the validity of its
                  patent, but rather it relies on the presumption alone.
12

13      PLAINTIFF's motion exhausts a total of three lines presenting conclusory

14  statements somewhat related to validity.  (See Motion, pp. 17:25-18:2.)  Rather than

15  make any attempt to fortify its position on validity, it appears PLAINTIFF elected

16  to hope that DEFENDANTS would not challenge the validity of the D'224 Patent

17  and that the presumption alone would suffice.  PLAINTIFF will have no such luck

18  and cannot rely solely on the presumption of validity.  (See Motion p.17:15-19

19  (quoting Canon Computer Sys. v. Nu-Kote Int'l, 134 F.3d 1085, 1088 (Fed. Cir.

20  1998)).)

21          b.    The D-224 Patent was improperly granted as it was subject to
                  an obviousness-type double patenting rejection due to the
22                D'503 Patent which was applied for and granted before the
                  more generic D'224 Patent.
23

24      Design patents are subject to the "double patenting" doctrine which precludes

25  a patentee from obtaining two separate design patents covering the same design.

26  The doctrine is derived from 35 U.S.C. § 171 which states: "Whoever invents any

27  new, original, and ornamental design for an article of manufacture may obtain a

28  patent therefor, subject to the conditions and requirements of this title."

TINGLEY LAW GROUP
ATTORNEYS AT LAW

                                    - 7 -        MEMO OF POINTS AND AUTHORITIES
                                                 CASE NO. SACV14-00172 CAS RNB

1    "To prevent extension of the patent right beyond statutory limits, the doctrine

2    of obviousness-type double patenting rejects application claims to subject matter

3    different but not patentably distinct from the subject matter claimed in a prior

4    patent." (In re Goodman, 11 F.3d 1046, 1052-1053 (Fed. Cir. 1993) (citing In re

5    Braat, 937 F.2d 589, 592 (Fed. Cir. 1991).  Obviousness-type double patenting is a

6    question of law.  (Texas Instruments Inc. v International Trade Commission,

7    988 F.2d 1165, 1179 (Fed. Cir. 1993).

8        The double patenting determination involves two separate inquiries.  The

9    first inquiry centers on the claims of the patent and asks whether the same invention

10   is claimed twice.  (General Foods Corp. v. Studiengesellschaft Kohle mb H,

11   972 F.2d 1272, 1278 (Fed. Cir. 1992).  If the claimed inventions have the same

12   scope, the proper rejection is under 35 U.S.C. § 171 because an inventor is entitled

13   to a single patent for a design.  (Miller v. Eagle Mfg. Co., 151 U.S. 186, 197

14   (1894).)

15       If one claimed invention has a broader scope than the other, the court must

16   proceed to a second inquiry: whether one claim defines merely an obvious variation

17   of the other patent claim.  (In re Vogel, 422 F.2d 438, 441 (C.C.P.A. 1970).)

18       There can be no colorable argument that the D'503 Patent and the D'224

19   Patent embody different designs.  A simple look and comparison of the design

20   claimed in the D'224 Patent and the design claimed in the design claimed in the

21   D'503 patent show that both patents claim the same design:

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

TINGLEY LAW GROUP
ATTORNEYS AT LAW

MEMO OF POINTS AND AUTHORITIES
CASE NO. SACV14-00172 CAS RNB

1
2
3
4
5
6
7
8
9
10
11



D'503 Patent           D'224 Patent
Figure 1 – The D'503 Patent and the D'224 Patent

12     Both involve the same arc-shaped ridges in a circular orientation. Both
13 display what appears to be an identical spray nozzle in the middle of the top section
14 of the design. Both display exactly 24 ridges along the side of the design. Both a
15 bottom section that is proportionately smaller than the top. There are simply no
16 differences (with the exception of the orientation of the shading lines) of any kind.

17     The D'503 Patent was filed with the USPTO and issued by the USPTO
18 before the D'224 Patent. Every single element claimed in the D'224 Patent was
19 previously disclosed and claimed in the D'503 Patent application. Given the
20 dramatic overlap of the claimed design, it is clear that the D'224 Patent functions to
21 merely extend the term of the design patent protection. A design patent is valid for
22 14 years after the issuance of the patent. (35 U.S.C § 289.) The D'503 Patent was
23 issued on May 1, 2012, and its corresponding term of protection would extend to
24 May 1, 2026. The D'224 Patent, however, was issued on November 12, 2013, and
25 its term of protection would extend to November 12, 2027.

26     Thus, by filing a second patent application (the D'224 Patent) which is not
27 patentably distinct for the first application, and whose elements were completely
28 disclosed and claimed in the first application (the D'503 Patent), PLAINTIFF has

1    improperly obtained an extended term for the design originally disclosed and

2    claimed in the D'503 Patent.  The D'224 should have been rejected on that ground

3    during the prosecution, and it remains invalid as issued.

4          Here, PLAINTIFF has no likelihood of success on the merits of its action

5    because the only patent on which it has moved, the D'224 Patent was invalidly

6    granted and remains invalid and unenforceable.

7                 c.     PLAINTIFF did not "invent" the "cupcake" or ribbed perfume
                        container, but rather combined basic elements from prior art.
8

9          In addition to the invalidity created by PLAINTIFF's double patenting,

10   PLAINTIFF's D'224 Patent is invalid because it was not a new and original design

11   at the time the application was filed.  A basic requirement of all patents, whether

12   they be design or utility patents, is that the claimed invention or design must be

13   original, or non-obvious.  (35 U.S.C. §§ 103, 171.)  Specifically, 35 U.S.C. § 103

14   provides: "A patent for a claimed invention may not be obtained, notwithstanding

15   that the claimed invention is not identically disclosed as set forth in [35 U.S.C.

16   § 102], if the differences between the claimed invention and the prior art are such

17   that the claimed invention as a whole would have been obvious before the effective

18   filing date of the claimed invention to a person having ordinary skill in the art to

19   which the claimed invention pertains."  These requirements also apply to design

20   patent claims.  (See 35 U.S.C. § 171; In re Haruna, 249 F.3d 1327, 1335 (Fed Cir.

21   2001).)

22         In particular, the requirement of non-obviousness ensures that the claimed

23   design reflects the "exercise of the inventive or originative faculty" as is required

24   for all patents.  (Smith v. Whitman Saddle Co., 148 U.S. 674, 679 (1893).)  **The**

25   **exercise of the inventive or originative faculty is required, and a person cannot**

26   **be permitted to select an existing form and simply put it to a new use any more**

27   **than he can be permitted to take a patent for the mere double use of a**

28   **machine**."  (Id. (emphasis added).)  Expressed in other terms, the requirement of

- 10 -

1   non-obviousness excludes those claimed designs which may possess artistic or

2   merchandising success but fall short of a creative invention.  (Patriarca Mfg., Inc. v.

3   Sosnick, 278 F.2d 389, 391-392 (9th Cir. 1960).)

4       As eloquently stated by the Ninth Circuit, "[o]ne may well agree that the

5   patented [design] presents a more pleasing appearance and one more calculated to

6   tempt the customer.  One may well conclude that, **artistically and from a**

7   **merchandising point of view, the patented [design] marks an advance** in

8   matters of design.  **Not every advance, however, is the result of creative**

9   **invention.  More often it can be credited to the normal progress which results**

10  **when discriminating taste and judgment are applied to that which has already**

11  **been discovered or created**."  (Id. (emphasis added).)

12      In addressing a claim of obviousness in a design patent, "'the ultimate

13  inquiry . . . is whether the claimed design would have been obvious to a designer of

14  ordinary skill who designs articles of the type involved.'"  (Apple, Inc. v. Samsung

15  Elecs. Co., 678 F.3d 1314, 1329-1330 (Fed. Cir. 2012) (citing Titan Tire, 566 F.3d

16  at 1375; Durling v. Spectrum Furniture Co., 101 F.3d 100, 103 (Fed. Cir. 1996)).)[1]

17      The test set forth in Durling (as applied in Apple v. Samsung, 678 F.3d at

18  1329-1330) provides a clear and concise framework for assessing the obviousness

19  of a claimed design.  In Durling, the court explained that a design patent may be

20  invalid as obvious if it "would have been obvious to a designer of ordinary skill

21  who designs articles of the type involved ... [to] combine[] teachings of [multiple]

22  prior art [references] to create the same overall visual appearance as the claimed

23  design."  (Durling, supra, 101 F.3d at 103.)  In the case at hand, the D'224 Patent

24  must be analyzed as to a designer of ordinary skill who designs perfume, fragrance,

25

26  [1] See also Payne Metal Enterprises, Ltd. v McPhee, 382 F.2d 541 (9th Cir. 1967) (Court determining patentability of

27  design must decide whether changes over prior art resulted in appearance of design as whole which would not have
    been obvious to person of ordinary skill in art.); In re Garbo, 287 F.2d 192 (C.C.P.A. 1961) (Patentable design may

28  contain old elements but, in order to be patentable, finished product must have unobvious appearance and not be
    merely result of obvious combination of old elements).)

1    or similar containers.

2         This requires that "one must find a single reference, 'a something in

3    existence, the design characteristics of which are basically the same as the claimed

4    design.'" (Id. (quoting In re Rosen, 673 F.2d 388, 391 (C.C.P.A. 1982)).)  Once

5    this reference is found, other references "may be used to modify it to create a

6    design that has the same overall visual appearance as the claimed design." (Id.)

7    Further, these additional references must be sufficiently related that "'the

8    appearance of certain ornamental features in one would suggest the application of

9    those features to the other.'" (Id. (quoting In re Borden, 90 F.3d 1570, 1575

10   (Fed. Cir. 1996)).)

11        While expert testimony may be "most helpful" in determining whether or not

12   a claimed design is obvious, the Court is not precluded from making that

13   determination in the absence of such testimony. (Petersen Mfg. Co. v. Central

14   Purchasing, Inc., 740 F.2d 1541, 1547-1548 (Fed. Cir. 1984).)  At this stage, where

15   all that is at issue is the vulnerability of the D'224 Patent to a finding of invalidity,

16   the Court can certainly make the determination on the vulnerability of the D'224

17   Patent to an attack on its obviousness.

18        While the small window of time provided by Plaintiff's Motion for

19   Preliminary Injunction has precluded a full search and examination of all the

20   perfume bottles created throughout the centuries, it is certainly clear that Plaintiff's

21   conical frustum with ribbed or fluted edges (which it calls a cupcake), is neither a

22   new or non-obvious creation.  As an initial matter, it is clearly beyond dispute that

23   Plaintiff did not invent the cupcake, or the shape of a cupcake or the "slight[ly]

24   concave curve from the top to the bottom" which is generally found in cupcakes.

25   The fact that PLAINTIFF refers to its own design as a cupcake actually undermines

26   its assertion that there was any inventive creation associated with the design

27   claimed in the D'224 Patent because of the cupcake's well-known, familiar shape.

28        PLAINTIFF would have the Court believe that there is no prior art which

1   could possibly undermine the validity of the D'224 Patent. (See Motion pp. 17:25-

2   18:2, fn.1.) However, the six (6) design patents cited as prior art by the examiner

3   can hardly be considered the full scope of prior art upon which the D'224 Patent

4   and its application read. The full scope of the prior art is set by 35 U.S.C. 102(a)

5   and includes anything that was "patented, described in a printed publication, or in

6   public use, on sale, or otherwise available to the public before the effective filing

7   date of the claimed invention." This would include the countless perfumes,

8   colognes, bottles, and other related items in a seemingly endless number of catalogs

9   and other publications, advertisements, and descriptions.

10          DEFENDANTS' swift review of some of the more readily available sources[2]

11   has produced numerous "things in existence" which have the same or similar

12   characteristics as Plaintiff's claimed invention. (See Yhudai Decl. ¶12, Exh. A;

13   Isaacson Decl. Exhs. B, C.) Some of these "things in existence" are shown below

14   in comparison to PLAINTIFF's. Looking at these examples which have arisen

15   from barely scratching the surface of the prior art available, it is clear that

16   Plaintiff's claimed design is either (1) completely anticipated by a single prior art

17   reference, or (2) an obvious combination/modification of elements  from things in

18   existence.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26

27   [2] For purposes of this Opposition, DEFENDANTS have focused their research and analysis on perfume/fragrance bottles which were clearly in existence prior to Plaintiff's alleged invention of the cupcake. However, going forward, there are certainly other categories of "things in existence" including, but not limited to, blown glass articles, bowls,

28   candy dishes, and other toiletry containers which will constitute prior art and obviate PLAINTIFF's "invention".

**MEMO OF POINTS AND AUTHORITIES**
**CASE NO. SACV14-00172 CAS RNB**

TINGLEY LAW GROUP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



D'224 Patent

Figure 2 - The D'224 Patent Drawing and Related Prior Art

PLAINTIFF's D'224 Patent "claims the curved and ridged edge sections shown in the D'224 Patent figures". (Motion p. 15:23-24.) The D'224 Patent does not extend to the spray mechanism or the separate top pieces of Plaintiff's products. (Motion pp. 6:5-7:4.) DEFENDANTS have already identified multiple examples of things in existence which include the same or similar "curved and ridged edge sections" claimed by PLAINTIFF. (See Yhudai Decl. ¶12, Exh. A; Isaacson Decl. Exhs. B, C.) Any subtle differences between these articles and the claimed design in the D'224 Patent are certainly not patentably distinct sufficient to allow PLAINTIFF to assert that the D'224 Patent is a "new, original, and ornamental design." Thus, the D'224 Patent is invalid because it is a simple and obvious combination of elements from the prior art.

DEFENDANTS' burden, at this stage, is not to prove invalidity, but to raise a

1 substantial question which demonstrates the vulnerability of the D'224 Patent.

2 DEFENDANTS have done this and more.  The things in evidence found from

3 quick, simple research call into question the obviousness of the D'224 Patent so

4 seriously that there is simply no way PLAINTIFF can demonstrate that it is likely

5 to succeed on the merits.  As such, PLAINTIFF cannot be entitled to a preliminary

6 injunction and its motion should be denied in its entirety.

7    d. PLAINTIFF's claims of "secondary indicia" of non-
      obviousness are conclusory red herrings because there is no
8      nexus between the purported indicia and the claims of D'244
      Patent.
9

10    PLAINTIFF's quick comments on the "secondary indicia of non-

11 obviousness" are unavailing to the invalidity of the D'224 Patent.  There are so-

12 called "secondary inidca of non-obviousness", such as commercial success, which,

13 if present, indicate that a patent was not obvious when created.  (Litton Systems,

14 Inc. v. Whirlpool Corp., 728 F.2d 1423, 1443 (Fed. Cir. 1984).)  However,

15 PLAINTIFF must demonstrate that the success and notoriety is due to the design

16 itself.  "To be of value, evidence of commercial success must **clearly establish that**

17 **the commercial success is attributable to the design**, and not to some other

18 factor, such as a better recognized brand name or improved function."  (Id.

19 (emphasis added).)

20    PLAINTIFF has made no showing that the success it has enjoyed is

21 attributable to the design claimed in the D'224 Patent alone.  Even the articles and

22 comments regarding PLAINTIFF's product line are not focused solely on the

23 portion claimed in the D'224 Patent, but rather on the whole product including a

24 highly decorative top.  (PLAINTIFF's Exhs. F-R.)  As can be seen in Figure 3

25 below, the substantial elements added to PLAINTIFF's market presentation of its

26 products strongly suggests that any acclaim and success is not focused on the

27 "curved and ridged edge sections shown in the D'224 Patent figures".  Rather,

28 one's attention is clearly drawn to the ornate decorations and embellishments found

- 15 -

1   in PLAINTIFF's market presentation of its products including tigers, crystals, and

2   snow globes.  PLAINTIFF could hardly claim that it would win awards by selling a

3   simple glass (or plastic for that matter) bottle incorporating the D'224 Patent's

4   design without anything else added.



Figure 3 – The D'224 Patent and Plaintiff's Products Presented to the Market

14        Additionally, it is unclear whether the purported commercial success has

15   anything to do at all with PLAINTIFF's product packaging.  PLAINTIFF is

16   referred to as a "luxury haute parfumerie".  (PLAINTIFF's Exh. I.)  In fact,

17   PLAINTIFF's founder, Nicole Mather, stated in December 2011 that she created

18   PLAINTIFF because she wanted "to return to the art of fragrance making using the

19   best quality ingredients to produce exciting luxury scents that stand apart from the

20   mass-market perfume houses."  (PLAINTIFF's Exh. H.)  Given PLAINTIFF's

21   clear focus on the quality of its fragrances, it is possible that the commercial

22   success is alleges is derived not from the design claimed in the D'224 Patent, but its

23   fragrances.

24        Finally, PLAINTIFF's own motion provides another explanation, unrelated

25   to the D'224 Patent, for its alleged commercial success.  PLAINTIFF states that in

26   order to promote its product, PLAINTIFF "has expended significant time, energy,

27   and expense" on tradeshows, interviews, print ads, online marketing, couture

28   events, advertising, and marketing.  (Motion pp.7:27-8:2)  If PLAINTIFF's success

1   is derived from its investment of time, energy, and expense, as well as from its

2   judgment, then it is of no value in determining whether or not the D'224 Patent was

3   non-obvious .

4        PLAINTIFF's attempts to salvage the validity of the D'224 Patent through

5   secondary indicia of non-obviousness are futile here.  First, PLAINTIFF's patent is

6   void of any inventive quality in light of the prior art and "[w]here invention is

7   plainly lacking commercial success cannot fill the void."  (Patriarca Mfg., Inc. v.

8   Sosnick, 278 F.2d 389, 391 (9th Cir. 1960).)  Second, even the alleged secondary

9   indicia of non-obviousness are unavailing because PLAINTIFF has made no

10  attempt to demonstrate a nexus because the alleged success and the D'224 Patent.

11       Again, PLAINTIFF's motion has failed to demonstrate a likelihood of

12  success on the merits because the D'224 Patent is invalid as an obvious

13  combination of elements from the prior art.  As such, PLAINTIFF's request for a

14  preliminary injunction must be denied.

15  **B.    There Is No Irreparable Harm**

16       In this case, as demonstrated below, PLAINTIFF has not demonstrated that it

17  is likely to suffer irreparable harm if this motion is not granted.

18       "Courts have consistently identified a showing of likely irreparable harm as

19  the single most important prerequisite for the issuance of a preliminary injunction;

20  Plaintiff must make that showing before the other requirement for the issuance of a

21  preliminary injunction need even be considered."  (Inspection Management

22  Systems, Inc v. Open Door Inspections, Inc., 2009 U.S. Dist. LEXIS 23524, at *3

23  (E.D. Cal., Mar. 26, 2009) (citing Dominion Video Satellite, Inc. v. Echostar

24  Satellite Corp., 356 F.3d 1256, 1260-61 (10th Cir. 2004).)

25       Previously, courts would generally presume the existence of irreparable

26  injury in trademark infringement cases.  (See Brookfield Communs., Inc. v. West

27  Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999).)  However, in

28  eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006), the Supreme Court

1  rejected any presumption of irreparable harm in the issuance of injunctive relief

2  related to allegations of patent infringement.

3      1.    The Lack of Any Likelihood of Success Negates Any Threat of
             Irreparable Harm.

4

5      The first reason PLAINTIFF is not likely to suffer irreparable harm is that

6  there is barely a glimmer of wishful thinking that the D'224 Patent is valid and

7  enforceable.  Given the likelihood that PLAINTIFF's D'224 Patent is invalid and

8  unenforceable, there is a correspondingly small chance that the absence of a

9  preliminary injunction will result in any harm at all to PLAINTIFF.  Rather, a

10  determination on the merits will certainly lead to a finding that PLAINTIFF's

11  D'224 Patent is invalid and PLAINTIFF has not suffered any harm as a result.

12      2.    PLAINTIFF Has Engaged In An Unexplained Delay of Over a Year
             Which Completely Undermines Its Claim Of Irreparable Harm.

13

14      Preliminary injunctions are drastic and extreme remedies.  They are intended

15  only to prevent irreparable harm that will occur during litigation.  A preliminary

16  injunction is justified only where there is an exigency that demands an immediate

17  injunction during litigation.

18      PLAINTIFF is not entitled to a preliminary injunction because its

19  **SUBSTANTIAL DELAY in seeking a preliminary injunction** is compelling

20  evidence there is no immediate and irreparable harm.  An "undue delay, standing

21  alone, constitutes grounds for rejecting a motion for preliminary injunction."

22  (Protech Diamond Tools, Inc. v. Liao, 2009 U.S. Dist. LEXIS 53382 at *19-20

23  (N.D. Cal. June 5, 2009); Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d

24  1374, 1378 (9th Cir. 1985) (affirming denial of preliminary injunction based on

25  delay alone, without assessing the likelihood of success on the merits).)

26  Specifically, a "long delay before seeking a preliminary injunction **implies a lack**

27  **of urgency and irreparable harm**."  (Id. at 1377 (emphasis added).)  Also,

28  "[w]here no new harm is imminent," a court is "not required to issue a preliminary

1   injunction against a practice which has continued unchallenged for several years."

2   (Id. at 1377.)  The Federal Circuit has previously affirmed the denial of a

3   preliminary injunction where a patentee waited for 15 months before bringing its

4   motion for a preliminary injunction.  (T.J. Smith & Nephew, Ltd. v. Consolidated

5   Medical Equipment, Inc., 821 F.2d 646 (Fed. Cir. 1987).)

6        The case at hand presents a delay of similar proportion to T.J. Smith.

7   Defendant Alice & Peter purportedly introduced their perfumes into the market in

8   November 2012. (Motion p. 10:8-12.)  Further, PLAINTIFF previously filed a

9   Complaint alleging the same causes of action in the Central District of California on

10  December 23, 2013.  (Isaacson Decl. ¶ 5, Exh. D.)  Despite this, PLAINTIFF did

11  not seek a preliminary injunction until the middle of February 2014.  PLAINTIFF

12  does not address or attempt to justify the delay.

13        Basically, the question is, if PLAINTIFF could wait for 15 months after the

14  Alice & Peter Perfume purportedly entered the market to bring a motion for

15  preliminary injunction, why can it not wait until there is a determination on the

16  merits of its claims to seek an injunction?

17        3.   PLAINTIFF Has Failed to Demonstrate Is Has Suffered Any Actual
             Harm.

18

19        PLAINTIFF has asserted that Defendant Alice & Peter introduced the

20  allegedly infringing perfume bottles over a year ago. (Motion p. 10:8-12.)  Not

21  only has PLAINTIFF delayed substantially in bringing its motion, but PLAINTIFF

22  has also failed to identify any specific harm it has already suffered from the

23  introduction of Alice & Peter's Perfume.

24        PLAINTIFF claims that there is irreparable harm because DEFENDANTS

25  are interfering with its exclusive rights granted by the D'224 Patent.  (Motion

26  p. 19:10-12.)  This argument is legally unsound.  If this "interference" argument

27  were sufficient to demonstrate irreparable harm, there would be a de facto

28  presumption of irreparable harm because every instance of alleged patent

1    infringement involves a claim of interference with the exclusive rights of the patent.

2    PLAINTIFF must do more than argue interference with its purported exclusive

3    rights to demonstrate it is likely to suffer irreparable harm.

4    PLAINTIFF also argues that irreparable harm will occur at upcoming trade

5    shows in Italy. (Motion pp. 12:19-27; 19:18-22.) However, it is well known that

6    United States patent laws "do not, and were not intended to, operate beyond the

7    limits of the United States." (Brown v. Duchesne, 60 U.S. 183, 195, 15 L. Ed. 595

8    (1856); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251 (Fed. Cir.

9    2000) ("extraterritorial activities, however, are irrelevant to the case before us,

10   because the right conferred by a patent under our law is confined to the United

11   States and its territories, and infringement of this right cannot be predicated on acts

12   wholly done in a foreign country" (internal citation omitted)). Thus, PLAINTIFF's

13   concerns about the trade shows in Italy are irrelevant and must be ignored.

14   PLAINTIFF also laments about the "impulse purchases in niche perfume

15   retail stores" who may choose the Alice & Peter's perfume over PLAINTIFF's.

16   (Motion p.19:23-27.) However, PLAINTIFF's website indicates that, in the United

17   States, PLAINTIFF's products can only be found in two retail stores. (Isaacson

18   Decl. ¶ 6, Exh. E.) It is not clear, therefore, who these "impulse purchasers" are

19   and whether there is really any risk presented. Furthermore, given the price

20   discrepancy between Plaintiff's products and Alice & Peter's perfume —

21   purportedly up to $1,451-it is unlikely that even such "impulse purchasers would

22   view the products as interchangeable substitutes. (Yhudai Decl. ¶ 16.) Thus, any

23   such sales would not be lost due to the alleged infringement, but the dynamics of

24   the competitive market.

25   Finally, PLAINTIFF claims that it has had discussions about creating a

26   completely new line of product that diverges from its current $300+ product lines

27   that would be sold to mass market retailers. (Motion p. 20:6-14.) PLAINTIFF

28   claims that it is suffering irreparable harm by the mere existence of the Alice &

1  Peter's Perfumes in the market.  However, PLAINTIFF apparently has done no
2  more than talk about the possibility while the Alice & Peter's Perfumes have been
3  purportedly on the market for over a year.  If PLAINTIFF believed its opportunity
4  to participate in the market is being harmed, why has it done nothing more that
5  have discussions?  Furthermore, PLAINTIFF was created "to produce exciting
6  luxury scents that stand apart from the mass-market perfume houses."
7  (PLAINTIFF's Exh. H.)  This raises doubt whether PLAINTIFF would actually
8  change its entire purpose and enter into direct competition with the mass-market
9  perfume houses.

10       In the end, PLAINTIFF has done no more than present its theories of harm as
11  a result of DEFENDANTS' alleged conduct.  However, these theories are baseless,
12  speculative, and not connected to irreparable harm.  Thus, PLAINTIFF has failed to
13  demonstrate any theory of irreparable harm to justify its request for a preliminary
14  injunction related to the D'224 Patent.

15  **C.   The Public Interest Is Not Served By An Injunction Stemming From An**
16  **Invalid Patent Which Unnecessarily Constrains Competition.**

17       PLAINTIFF argues that the public interest is served by protecting patents
18  rights because they support innovation.  (Motion p.22:5-18.)  However, this can
19  only be true where there are legitimate patent rights to protect.  In the case of an
20  invalid patent, particularly one that is invalid because it claims an obvious
21  invention, protecting the patent will not support innovation.  (See, e.g., Kalipharma,
22  Inc. v. Bristol-Myers Co., 707 F.Supp. 741, 756-757 (S.D.N.Y. 1989).  ("Of course,
23  public policy favors enforcement of valid patent rights, including the right to
24  exclude others.  []  The key word here is 'valid', however, and in this case plaintiff
25  has strongly and convincingly challenged the patent's validity. . . .  The converse is
26  also true, that a court should be cautious to use its equity powers when a challenger
27  has so clearly challenged the patent's validity.").)

28

**D. PLAINTIFF's Request Injunction Is Ill-Defined Which Will Cause Undue Hardship and Incalculable Harm to DEFENDANTS Due to Its Undefined Limitations.**

Should the Court find that despite the overwhelming evidence raising at least a substantial question as to validity a preliminary injunction is warranted, PLAINTIFF's proposed preliminary injunction is unacceptable.

In its proposed preliminary injunction, PLAINTIFF seeks an injunction against DEFENDANTS from "directly or indirectly . . . making, using, offering to sell, or selling within the United States or importing into the United States any bottle which infringes the design claimed in U.S. Patent No. D'693,224." (PLAINTIFF's Proposed Preliminary Injunction, § A(b).)  This language is problematic for many reasons.  First, it provides notice to DEFENDANTS of which items would fall under the scope of the preliminary injunction. DEFENDANTS cannot calculate the potential harm caused by such an injunction because there is no way to know which bottles would be subject to the injunction.

This language is also problematic because a preliminary injunction is only warranted where Plaintiff has shown that it is **likely to succeed** on the merits, (2) that it is **likely to suffer irreparable harm** in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  By referencing these additional, unidentified items, DEFENDANTS cannot challenge any of the elements PLAINTIFF is required to establish before a preliminary injunction may be entered.  If PLAINTIFF wants to expand the scope of its injunction to include additional items, it must identify those items so a proper preliminary injunction analysis can be performed.

As such, PLAINTIFF's proposed preliminary injunction is unacceptable and must be narrowly tailored to the allegedly infringing items PLAINTIFF has specifically identified.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TINGLEY LAW GROUP
ATTORNEYS AT LAW

## IV.  CONCLUSION

Because there are serious and substantial questions concerning the D'224 Patent's validity and obviousness, and in the absence of irreparable harm or public interest favoring a preliminary injunction, the Court should deny PLAINTIFF's Motion for Preliminary Injunction in its entirety.  Alternatively, the Court should narrow the proposed preliminary injunction to cover only those items identified and analyzed by PLAINTIFF to avoid undue hardship and a non-meritorious preliminary injunction.

Dated: February 24, 2014                    TINGLEY LAW GROUP, PC

                                                          By:
                                                             KEVIN W. ISAACSON
                                                             Attorneys for Said Defendants

MEMO OF POINTS AND AUTHORITIES
CASE NO. SACV14-00172 CAS RNB