UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| R. Neal for C. JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants | |
| n/a | n/a | |

**Proceedings:** MOTION FOR A PRELIMINARY INJUNCTION (dkt. 13, filed February 14, 2014)

## I.   INTRODUCTION

On February 5, 2014, plaintiff Sillage LLC ("Sillage") filed suit against defendants Histoires de Parfums LLC, d/b/a Alice & Peter ("A&P"), Scent-Sation LA, and P.E., Inc., d/b/a Perfume Emporium ("Perfume Emporium").  Plaintiff asserts claims for (1) patent infringement pursuant to 35 U.S.C. § 271, (2) trade dress infringement pursuant to 15 U.S.C. § 1125(a), (3) trademark infringement pursuant to 15 U.S.C. § 1114, and (4) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

On February 14, 2014, plaintiff moved for a preliminary injunction in connection with its claim for patent infringement.  Defendants Scent-Sation LA and Perfume Emporium filed an opposition on February 24, 2014.  Defendant A&P did not file an opposition.  On March 3, 2014, plaintiff replied.  On March 17, 2014, the Court held a hearing.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff Sillage produces and sells high-end luxury perfumes.  Mather Decl. ¶¶ 9-10.  The distinctive feature of Sillage perfumes is that they are sold in cupcake-shaped bottles, which are made of crystal and feature a decorative cap.  Id. ¶¶ 6, 11.  An exemplar of a Sillage perfume bottle is displayed below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |



Id. ¶ 11.  Plaintiff asserts that it has expended significant time and money marketing and promoting these cupcake-inspired designs for its perfume bottles.  Id. ¶ 12.

On November 12, 2013, the U.S. Patent and Trademark Office issued U.S. design patent D693,224 ("D'224 patent) to Nicole Mather, the founder of Sillage and designer of the cupcake shaped bottles.  Id. ¶ 7.  The D'224 patent claims an "ornamental design for a display bottle."  Mather Decl. Ex. C.  Specifically, the D'224 patent claims a design for a bottle employing a ridged, slightly concave surface:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |



Id.[1]  Sillage is the exclusive licensee of the D'224 patent.  Compl. ¶ 10.

      Plaintiff contends that defendant A&P produces and sells perfumes packaged in bottles that infringe the D'224 patent.  Rueda Decl. ¶¶ 13-15.  An exemplar of A&P's "Cheery Cherry" perfume is depicted below:

---

[1] Consistent with Patent and Trademark Office practice concerning patent illustrations, "[t]he broken lines immediately adjacent to the shaded areas represent the bounds of the claimed design while all other broken lines represent environment and are for illustrative purposes only; the broken lines form no part of the claimed design." Mather Decl. Ex. C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |



Id. Ex. T. Plaintiff further alleges that these A&P perfumes are sold at defendants Scent-Sation and Perfume Emporium's niche perfume stores, as well as online through various third-party websites. Compl. ¶¶ 38-39.[2]

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 375 (2008). The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

---

[2] The Court is unable to locate any evidence in the record—as opposed to allegations in the complaint—showing that defendants Scent-Sation and Perfume Emporium sell A&P perfume.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

### IV. DISCUSSION

"Because a showing of probable irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction,' the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (citations omitted). The Court accordingly begins by reviewing plaintiff's evidence that it will suffer irreparable harm in the absence of a preliminary injunction.

Plaintiff states that defendants' cupcake-inspired perfume bottles threaten to erode plaintiff's unique status in the perfume market as the purveyor of cupcake-inspired perfume. Plaintiff's founder, Nicole Mather, states that, to her knowledge, plaintiff and defendants are the only perfume brands currently producing and selling perfume in cupcake shaped bottles. Mather Decl. ¶ 19. Plaintiff claims that, prior to defendants' entry into the market, Sillage's "cupcake-inspired bottle and embellished cap have been synonymous with and inseparable from House of Sillage since 2011." Id. ¶ 17. As evidence, plaintiff supplies numerous articles from trade publications lauding plaintiff's cupcake shaped bottles. See, e.g., id. exs. F-P.

Plaintiff contends that A&P's copycat bottles undermine plaintiff's ability to sell its perfume in four separate ways. First, both A&P and plaintiff will attend two upcoming perfume trade shows that will take place in Europe in March and September 2014. Buyers at these trade shows may choose to fill their perfume quotas with A&P's cupcake-inspired perfumes, rather than plaintiff's product. Rueda Decl. ¶¶ 20-21. Second, plaintiff fears that A&P's perfume will join, or even replace plaintiff's perfumes in niche retail perfume stores. Id. ¶¶ 22-25. Third, plaintiff supplies evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

consumers searching for cupcake-inspired perfume on the Internet will discover A&P's copycat perfume rather than plaintiff's perfume. Id. ¶ 26. In particular, screenshots of internet searches display A&P's perfume being portrayed as the "Original Cupcake Perfum." Id. exs. U, V. Lastly, plaintiff outlines how A&P's perfume, which is considerably cheaper than plaintiff's product, threatens to undermine plaintiff's plans to launch a cheaper, down-market version of its cupcake perfumes. Id. ¶¶ 27-28. "In summary, A&P has taken Sillage's signature presentation and adopted it as its own." Mot. 14.

With this evidence in mind, the Court turns to whether plaintiff has shown a sufficient threat of irreparable harm to justify preliminary injunctive relief. In the context of patent infringement, a plaintiff can only demonstrate irreparable harm if it articulates a "causal nexus" between the alleged infringement and the harm to plaintiff and its market share. This Court's analysis of the causal nexus requirement is guided by two recent Federal Circuit decisions discussing the doctrine in great detail. In Apple, Inc. v. Samsung Electronics Co., Ltd., 678 F.3d 1314 (Fed. Cir. 2012) ("Apple I"), the Federal Circuit reviewed the district court's grant of a preliminary injunction enjoining Samsung from selling smartphones that allegedly infringed several utility and design patents owned by Apple. As relevant here, the Federal Circuit found that the district court had properly applied the causal nexus requirement when it determined that, even assuming Samsung's products infringed two of Apple's design patents, Apple had nonetheless not shown that such infringement would cause irreparable harm. The Federal Circuit began by explaining the basic logical underpinnings of the "causal nexus" doctrine:

> To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

Apple I, 678 F.3d at 1324. Applying these principles, the Federal Circuit affirmed the district court's finding that "while there was evidence that design had some effect on smartphone sales, there was considerable countervailing evidence indicating that it was not a determinative factor in consumer decisionmaking" and that this evidence "did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

clearly show that Samsung's allegedly infringing design was responsible for Apple's lost sales."  Id.

The Apple I court further stressed that, under controlling Supreme Court precedent, a "mere showing that Apple might lose some insubstantial market share as a result of Samsung's infringement is not enough" to establish irreparable harm.  Id. at 1324-25.  In Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008), for example, the Supreme Court held that "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  See also O'Shea v. Littleton, 414 U.S. 488, 502 (1974) (requiring party seeking injunctive relief to establish "the likelihood of substantial and immediate irreparable injury").  Accordingly, the Federal Circuit held that Apple had failed to establish a sufficient "causal nexus" between Samsung's alleged infringement and some harm to Apple and its marketshare.  Under such circumstances, Apple had failed to demonstrate irreparable harm; a preliminary injunction would thus be inappropriate.

The Federal Circuit subsequently revisited the causal nexus doctrine in the follow-up case Apple Inc. v. Samsung Electronics Co., Ltd., 695 F.3d 1370 (Fed. Cir. 2012) ("Apple II"), which evaluated the district court's grant of a preliminary injunction against infringement of a separate utility patent owned by Apple.  The Federal Circuit began by articulating the scope of the causal nexus doctrine: "[I]n cases where the accused product includes many features of which only one (or a small minority) infringe, a finding that the patentee will be at risk of irreparable harm does not alone justify injunctive relief.  Rather, the patentee must also establish that the harm is sufficiently related to the infringement."  Id. at 1374 (citing Apple I, 678 F.3d at 1324).  The Apple II court then explained that the "causal nexus" requirement was designed to ensure proportionality between the strength and scope of the patent and the breadth of the preliminary injunction:

> [I]t may very well be that the accused product would sell almost as well without incorporating the patented feature. And in that case, even if the competitive injury that results from selling the accused device is substantial, the harm that flows from the alleged infringement (the only harm that should count) is not. Thus, the causal nexus inquiry is indeed part of the irreparable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

harm calculus: it informs whether the patentee's allegations of irreparable harm are pertinent to the injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant.

Id. at 1374-75. Ultimately, the Federal Circuit reemphasized Apple I's teaching that to show irreparable harm, a "patentee must . . . show that the infringing feature drives consumer demand for the accused product." Id. at 1375.

Courts applying the causal nexus analysis in the wake of Apple I and Apple II have focused on the need for patent plaintiffs to come forward with evidence showing that the patented feature "drives consumer demand for the accused product." In Briggs & Stratton Corp. v. Chongquing Rato Power Co., Ltd., 2013 WL 3972391 (N.D.N.Y. July 23, 2013), for example, the district court considered whether to grant a preliminary injunction enjoining the sale of lawnmowers manufactured by the defendant. These lawnmowers employed independent suspensions, certain features of which allegedly infringed plaintiff's patents on "central longitudinal beams" and "pivotal coupling." The district court denied the motion for a preliminary injunction, finding that plaintiff had not established a causal nexus between the alleged infringement and consumer demand for the lawnmowers. Specifically, the court reasoned that even if consumers do buy lawnmowers because they feature independent suspensions, the patents at issue only pertained to the suspension's "use of central longitudinal beams and pivotable coupling." Id. at *22. But the Briggs plaintiff "never once address[ed], even cursorily, what effect the 'central longitudinal beam' and 'pivotably coupled' features of the [lawnmower suspension] might have on customer demand for that product." Accordingly, "[a]bsent evidence demonstrating that those features 'drive[ ] consumer demand' for the [lawnmower], plaintiffs have not established the requisite 'causal nexus' and, therefore, have not satisfied their burden to show irreparable harm." Id.; see also Malibu Boats, LLC v. Nautique Boat Co., Inc., 2014 WL 417886 (E.D. Tenn. Feb. 4, 2014) ("Here, plaintiff has not presented enough evidence for the Court to conclude, on the record before it, that [the patented feature] is driving consumer demand for defendant's boats, given the fact that [the patented feature] is one component of a boat with 'many features,' and given the evidence that purchasers of defendant's boats are also driven by non-product factors such as dealer familiarity and service." (citation omitted)).

Turning to the case at hand, the Court finds that plaintiff has not demonstrated a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

sufficient causal nexus between defendants' alleged infringement of the D'224 patent and an irreparable harm to plaintiff. As described above, plaintiff's evidence of irreparable harm focuses on the threat that defendant's imitation perfume bottles will supplant plaintiff's status as the sole purveyor of cupcake-shaped perfume bottles. But even if the Court were to accept that defendants' cupcake-shaped perfume will undermine plaintiff's business model, it does not follow that plaintiff has demonstrated that the alleged infringement will cause irreparable harm. The D'224 patent does not grant plaintiff the exclusive right to market cupcake-shaped perfume bottles. Instead, the D'224 patent claims only the "particular design of the ridge edge having a slight concave curve from top to bottom." Mot. 7. Accordingly, even assuming that the design of defendants' perfume bottles was copied wholesale from plaintiff's perfume bottles, the only portion of defendants' bottles that could potentially infringe the D'224 patent is the ridged-edge portion of the bottle's exterior surface. Other elements of the cupcake-shaped design, such as the "frosting" bottle caps, do not infringe the D'224 patent, no matter how much they resemble plaintiff's products.

As in Apple I and Apple II, then, this is a case where the defendants' products "include[] many features of which only one (or a small minority) infringe." Apple II, 695 F.3d at 1374. As such, the causal nexus doctrine requires plaintiff to demonstrate that the patented feature—i.e., the ridged edge of the perfume bottle's exterior—"drives consumer demand for the accused product." Id. at 1375. Plaintiff has not done so. At most, plaintiff's evidence demonstrates that consumer design for the perfume is driven by the overall cupcake design of the bottles. But plaintiff provides no evidence showing that the ridged, concaved edge of the bottle—the design claimed by the D'224 patent—drives consumer demand. To the contrary, much of plaintiff's evidence tends to show that it is other features of the bottles, such as the "frosting" caps, that is the most salient feature of the design. For example, many of the magazine articles cited by plaintiff emphasize these caps. See, e.g., Mather Decl. Ex. G ("Entitled 'Tiara', the expensive perfume's bottle is designed like a cupcake with an elegant tiara on top of it, encrusted with white crystals and faceted blue stones."); id. Ex. K ("The custom-made, domed lids on the line's perfume bottles are encrusted with Swarovski crystal, hard to resist even for the most bling-averse visitors . . . .").

By contrast, none of the magazine quotes supplied by plaintiff mention the ridged edges of the perfume bottles. See id. ¶ 14. Nor has plaintiff supplied any other evidence showing that consumer demand is driven by the ridged edges of the bottle surface. If

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

consumers purchase the cupcake-inspired bottles because of the (unpatented) frosting caps, rather than the (patented) ridged edges, then defendants' alleged infringement of the D'224 patent has not caused plaintiff irreparable harm.  As noted in Apple I, "[s]ales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature."  678 F.3d at 1324.  The Court therefore concludes that plaintiff has not established a sufficient causal nexus between defendants' alleged infringement of the D'224 patent and an irreparable harm to plaintiff.

Plaintiff resists this conclusion, on two grounds.  First, plaintiff objects to any analysis that "carve[s] apart" their product design by focusing on just the ridged edges of the bottle surface, arguing "that it is [p]laintiff's presentation as a whole that has achieved commercial success."  Reply 6.  For the reasons discussed above, however, the D'224 patent does not confer on plaintiff exclusive rights on the cupcake "presentation as a whole."  Instead, the Court must "carve up" the design to focus on defendants' alleged infringement of the ridged-edge design claimed in the D'224 patent.

Second, plaintiff argues that the ridged-edge bottle design is essential to the overall cupcake imagery, which in turn drives consumer demand for the perfume.  Reply 6-7.  The Court finds this contention unpersuasive.  As an initial matter, plaintiff, who bears the burden of establishing "the likelihood of substantial and immediate irreparable injury," O'Shea, 414 U.S. at 502, has not supplied any evidence showing that the ridged-edge surface claimed by the D'224 patent is in fact an indispensable element of the cupcake-inspired design.  Plaintiff does not, for example, produce evidence showing that cupcake-shaped perfumes with a smooth—as opposed to ridged—bottle surface have been less successful in the marketplace.

Furthermore, even if the cupcake imagery would be disrupted by the absence of ridged edges on the bottle, that alone does not necessarily establish the required causal nexus.  Apple II speaks directly to this point.  In that case, the district court found that the patented search feature at issue was a "but-for driver" of consumer demand because the search feature was "core" to the phone's functionality.  Apple, Inc. v. Samsung Electronics Co., Ltd., 877 F. Supp. 2d 838, 909 (N.D. Cal. 2012).  The Federal Circuit reversed, holding:

> The causal nexus requirement is not satisfied simply because removing an allegedly infringing component would leave a particular feature, application,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-00172-CAS-RNBx | Date | March 17, 2014 |
|---|---|---|---|
| Title | SILLAGE LLC V. HISTOIRES DE PARFUMS LLC ET AL. | | |

or device less valued or inoperable. A laptop computer, for example, will not work (or work long enough) without a battery, cooling fan, or even the screws that may hold its frame together, and its value would be accordingly depreciated should those components be removed. That does not mean, however, that every such component is "core" to the operation of the machine, let alone that each component is the driver of consumer demand. To establish a sufficiently strong causal nexus, Apple must show that consumers buy the Galaxy Nexus because it is equipped with the [search feature] claimed in the patent . . . .

Apple II, 695 F.3d at 1376. So too here. Removing the ridged edges from the perfume bottle may well detract from the overall cupcake imagery central to both plaintiff's and defendants' perfumes. Even so, this alone does not establish a causal nexus between defendants' infringement of the D'224 patent and an irreparable harm to plaintiff. Instead, plaintiff must affirmatively demonstrate that it is the ridged-edge design in particular that drives consumer demand for these perfumes. Here, plaintiff has not done so. Accordingly, the Court concludes that plaintiff has not established that it will be irreparably harmed in the absence of preliminary relief. As such, a preliminary injunction is not warranted.

### V.  CONCLUSION

In accordance with the foregoing, the Court hereby DENIES plaintiff's motion for a preliminary injunction.

IT IS SO ORDERED.

                                                                00:10
                                                                RGN/CMJ